EARL H. SPERO, Respondent, *v.* ALBERT J. KOBLER, Appellant.*

First Department, December 13, 1935.

*Horace S. Manges* of counsel [*Gabriel Kaslow* with him on the brief; *Weil, Gotshal & Manges*, attorneys], for the appellant.

*Morris Grossman*, for the respondent.

UNTERMYER, J.   The plaintiff, a broker, recovered judgment in the City Court for a balance of commissions alleged to have been earned on the sale of the defendant's real estate.   The judgment was affirmed by a divided court in the Appellate Term.

* Revg. 155 Misc. 590.

The contract under which the plaintiff was employed by the defendant is dated January 12, 1931, and provides, in part: " I am to receive $2,000 as full payment for commission in the transaction; $500 to be paid on the signing of the contract and the balance of $1,500 if, as and when title is taken by the purchaser."

The plaintiff procured a purchaser who entered into a contract with the defendant on which a deposit of $2,500 was paid and whereby title was to close on February 2, 1931. On the execution of that contract the defendant paid $500 to the plaintiff. On February 2, 1931, the parties met to close title. The seller's executed deed was ready for delivery and the purchaser was prepared to pay the consideration stipulated in the contract of sale. It was then ascertained over the telephone by the title company representing the purchaser that three days previously, without the defendant's knowledge, a *lis pendens* had been filed against the property. A stipulation was thereupon made adjourning the date of closing to February fifth. On the adjourned date, the *lis pendens* still existing, the parties met again to close title. What occurred at that time appears from the testimony of the attorney for the purchaser, who was called as a witness for the plaintiff. From his testimony it is clear beyond the point of contradiction that the defendant was ready and willing to convey the property to the purchaser in accordance with the contract of sale. It is equally clear that the purchaser was unwilling to perform and that, as the attorney testified, he " rejected the title " in the belief that the existence of the *lis pendens* constituted an adequate objection. That impression seems also to have been shared by the defendant, whose attorney suggested when title was rejected, that he would attempt to arrange an adjustment with respect to the deposit paid on the contract, the counsel fees and other obligations incurred by the purchaser in connection with the sale. All these were subsequently repaid to the purchaser by the defendant. This action was to recover the balance of $1,500 commission alleged to be due.

The Appellate Term was unanimous in holding upon the authority of *Simon* v. *Vanderveer* (155 N. Y. 377), that the mere existence of the *lis pendens* did not justify the purchaser in rejecting title because the complaint on which the *lis pendens* was founded was thereafter dismissed as insufficient in law. A majority of the Appellate Term were, however, of opinion that the defendant had failed in his duty to the plaintiff in that he had acquiesced in the purchaser's refusal to take title for reasons which were found to be inadequate.

We think that this conclusion imposes on the seller a burden which he has not assumed where the broker's right to commissions is conditioned on the closing of title. The rule is established by the

decision in *Amies* v. *Wesnofske* (255 N. Y. 156) that under a broker-age contract so conditioned the seller is not liable to the broker unless he has taken some affirmative action to hinder or prevent performance. Performance is not hindered or prevented by the seller when he is ready, able and willing to convey title at the time of closing and the failure to close results from the act of the purchaser. " The doctrine is purely one of waiver; active conduct of the conditional promisor, preventing or hindering the fulfillment of the condition, eliminates it and makes the promise absolute. No such doctrine can be efficacious to compel positive action by the promisor to bring about the performance of the condition. For that result the implication of a promise would be requisite. The vendor of property makes no contract with his broker to procure from the vendee the performance of a contract of sale. (*Fox Co.* v. *Wohl*, 255 N. Y. 268.) The situation justifies no implication to that end, for the broker, in placing reliance upon the self-interest of the vendor in procuring performance from the vendee, is ordinarily secure. On principle, then, the duty of a vendor to his broker is fulfilled if he remain passive and neutral; the condition, upon which the payment of commissions is made to depend, is waived only where the vendor is active to prevent or hinder its performance." (*Amies* v. *Wesnofske, supra,* p. 163.)

Applying these principles to the case at hand, we think the defendant is not liable for brokerage. Concededly, at the time of closing, he was ready, able and willing, and, concededly, also, the purchaser was unwilling, to perform the contract of sale. Under these circumstances the defendant was not under the necessity of making any tender of the deed in order to put the purchaser in default. (*Bigler* v. *Morgan*, 77 N. Y. 312.) After the purchaser had rejected title, such a tender would have been an obvious futility. (*Strasbourger* v. *Leerburger*, 233 N. Y. 55.) While the contract of sale was alive the defendant had not consented to its cancellation as he had in *Zittel & Sons* v. *Schwartz* (192 App. Div. 353), upon which the plaintiff relies. He had, therefore, not excused perform-ance by the purchaser and was himself willing, and apparently anxious, to perform. Was the defendant under any obligation to do more, after the condition on which the plaintiff had staked his right to commissions had failed of fulfillment without fault on the defendant's part? When that occurred the defendant might, it is true, have retained the deposit. He might have refused to pay the purchaser's expenses incurred in connection with the sale. But he was under no duty to the broker to do so. The contract of sale had been abrogated by the purchaser. Non-performance by the purchaser was an existing fact creating certain rights in the defend-

ant's favor against the purchaser, which he might or might not conclude to enforce. " Passive acquiescence in a declared default and its consequences was not an act of prevention or hindrance." (*Amies* v. *Wesnofske, supra,* p. 165.)   The defendant was under no greater duty to the plaintiff to subject himself to an action by the purchaser, however groundless, for the deposit and expenses than to institute an action against the purchaser for specific performance of the contract or for damages.   Although the consequences to the plaintiff were the same as a rescission of the contract of sale, it was a rescission which resulted from a breach of contract by the purchaser.   Such a breach was one of the hazards which the broker had assumed.   Consequently, when the condition on which the plaintiff's right to compensation had failed, the defendant was at liberty to consult his own interest in determining what adjustment to make with the purchaser.   The fact that under a misconception of his rights he made an adjustment which was unduly advantageous to the purchaser does not affect the situation.

The determination of the Appellate Term and the judgment of the City Court should be reversed and the complaint dismissed, with costs to the defendant in all courts.

MARTIN, P. J., MERRELL, McAVOY and O'MALLEY, JJ., concur.

Determination of the Appellate Term and judgment of the City Court reversed and the complaint dismissed, with costs to the defendant in all courts.